UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GENEVIEVE and GLENN STILLMAN,   )<br>              Plaintiffs,                )<br>                                 )<br>      v.                                )<br>                                 )<br>TOWN OF NEW BRAINTREE and MARTIN  )<br>GOULET a/k/a MARTY GOULET individually  )<br>and in his capacity as Chair of the Select Board  )<br>of the Town of New Braintree,               )<br>              Defendants.             )<br>_____)| **CIVIL ACTION**<br>**NO. 12-cv-12033-TSH** |

## PROPOSED FINDINGS OF FACT AND RECOMMENDATIONS REGARDING DEFENDANTS' MOTION TO DISMISS
**(Docket #12)**

**June 28, 2013**

HENNESSY, M.J.

      Pursuant to 28 U.S.C. § 636(b)(1)(B), and an Order (Docket #18) referring the Defendants' Motion to Dismiss (Docket #12) to me, I make the following proposed findings of fact and recommendations:

### BACKGROUND

      Plaintiffs Genevieve and Glenn Stillman filed this action against the town where they reside, New Braintree, and against Martin Goulet individually and in his capacity as the Chair of the Select Board of New Braintree. In Count One of a two-count complaint, the Stillmans bring an action under 42 U.S.C. § 1983 alleging that by unilaterally installing a pond leveler on their property, the Defendants unlawfully deprived the Stillmans of their property without just compensation, in violation of the Takings Clause of the Fifth Amendment. In Count Two, the Stillmans allege the Defendants deprived them of their property by making threatening

1

statements, harassing them, and otherwise intimidating them, regarding the installation of the pond leveler, in violation of the Massachusetts Civil Rights Act, Mass. Gen. Laws ch. 12 §§ 11H and 11I.  Defendants removed the Complaint to federal court, citing the federal question presented in Count One.  28 U.S.C. § 1441(c)(1)(A).  Defendants now seek dismissal of the Complaint in its entirety on the grounds that the Plaintiffs' claims are unripe due to their failure to exhaust state remedies.[1]

## STANDARD OF REVIEW

On a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court "must assume the truth of all well-plead[ed] facts and give the plaintiff the benefit of all reasonable inferences therefrom."  Ruiz v. Bally Total Fitness Holding Corp., 496 F.3d 1, 5 (1st Cir. 2007) (citing Rogan v. Menino, 175 F.3d 75, 77 (1st Cir. 1999)).  Materials attached to a complaint, or incorporated by reference, are a part of the pleading itself, and the Court may consider them on a motion to dismiss.  Trans-Spec Truck Serv. v. Caterpillar, Inc., 524 F.3d 315, 321 (1st Cir. 2008).  To survive a motion to dismiss, the plaintiff must state a claim that is plausible on its face.  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007).  That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . .  on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  Id. at 555 (citations omitted).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 556, 127 S. Ct. at 1965).  Dismissal is appropriate if plaintiff's well-pleaded facts do not "possess enough

---

[1] Defendants also seek dismissal of Count Two on the alternative theory that the Town is immune from suit under the Massachusetts Civil Rights Act.  Because I am recommending that Count Two be remanded to the state court, I do not address the merits of this immunity defense.

heft to show that plaintiff is entitled to relief." Ruiz Rivera v. Pfizer Pharms., LLC, 521 F.3d 76, 84 (1st Cir. 2008) (quotations and original alterations omitted).

## FACTS

The following relevant facts are taken from the Complaint and are accepted as true for purposes of this recommendation.[2] Trans-Spec Truck, 524 F.3d at 321.

Sometime before 2011, beavers constructed a dam on the Stillmans' property in New Braintree, Massachusetts (the "Town"). In 2011, Town agencies expressed concern that the beaver dam might be affecting a neighbor's well, and/or causing flooding to a Town road. The Stillmans dispute that the dam was causing either of these issues. On or about August 31, 2011, the Town's Conservation Commission paid an outside contractor to breach the dam. Thereafter, the Town sent the Stillmans a letter informing them that they would be required to install a pond leveler (i.e., a flow control device). At the time the letter was delivered, the Town had breached the dam, there was no flooding, and any concerns about beavers rebuilding the dam could have been addressed by trapping the beavers -- all of which the Stillmans had already agreed could happen. The Stillmans offered to offset costs for the installation of a pond leveler, but they never indicated they were willing to assume ownership of and responsibility for it. Nevertheless, on October 11, 2011, the Town arranged for an outside contractor to install a pond leveler on the Stillmans' property. Thereafter, in the spirit of cooperation, the Stillmans sent a check in the amount of $1,100.00 to the Town in order to help offset the cost of the pond leveler. Within weeks, the Town returned the $1,100.00 check and informed the Stillmans that (i) the Town would not be responsible for the leveler, and (ii) the Stillmans would need to arrange to cover the entire cost and pay for future maintenance of the leveler. After several months of back and forth

---

[2] Although the Complaint references certain exhibits, no exhibits are attached to the Complaint. Thus, the Court considers the facts as presented by the four corners of the Complaint.

communications, on April 10, 2012, the Stillmans' attorney sent a letter to the Town informing it that installation of the pond leveler amounted to an unconstitutional taking of a portion of the Stillmans' property without just compensation, and asked the Town to agree to pay for the installation and maintenance of the pond leveler.  To date, the Town has neither paid for the leveler nor for its maintenance.  The Stillmans filed the instant Complaint in the Massachusetts Superior Court, Worcester Division, on or about September 27, 2012.  Attorneys for the Town and Goulet removed the case to this court on or about October 31, 2012, and now seek dismissal of Count One.[3]

## DISCUSSION

Under Count One, the Plaintiffs allege the Defendants violated their right under the Fifth Amendment to the U.S. Constitution by installing a pond leveler on Plaintiffs' property without just compensation.  See U.S. Const. amend. V ("nor shall private property be taken for public use, without just compensation").  As the language of the Fifth Amendment makes clear, the Constitution "does not proscribe the taking of property; it proscribes taking without just compensation."  Williamson County Regional Planning Comm'n v. Hamilton Bank, 473 U.S. 172, 194-95, 105 S. Ct. 3108, 3120-21 (1985).  Thus, the protections of the Fifth Amendment require a "reasonable, certain and adequate provision for obtaining compensation" exist at the

---

[3]  Defendants also move for dismissal of Count Two, arguing that Plaintiffs' state law constitutional claim also fails due to Plaintiffs' alleged failure to exhaust their remedies under Mass. Gen. Laws ch. 79.  Because Count Two is a state law claim, and because I am recommending dismissal of the only federal claim (Count One), I recommend that Count Two be remanded to the state court.  See 28 U.S.C. § 1367.  See also, Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 357, 108 S. Ct. 614, 623 (1988)("[A] district court has discretion to remand to state court a removed case involving pendent claims upon a proper determination that retaining jurisdiction over the case would be inappropriate.").  I therefore do not address Count Two further.

time of the taking.  Regional Rail Reorganization Act Cases, 419 U.S. 102, 124-125, 95 S. Ct. 335, 349 (1974) (quoting Cherokee Nation v. Southern Kansas R. Co., 135 U.S. 641, 659, 10 S. Ct. 965, 971 (1890)) (noting that just compensation need not be paid in advance of, nor contemporaneously with, the taking, so long as there is a procedure in place).  Consistent with the language of the Fifth Amendment and cases interpreting the Takings Clause, as recently as June 2013, the Court noted that there are two prerequisites before a Fifth Amendment takings claim is ripe:  "a Fifth Amendment claim is premature until it is clear that the Government has both taken property and denied just compensation."  Horne v. Department of Agriculture, 2013 WL 2459521 at *8 (June 10, 2013) (emphasis in original).

The requirement that a Fifth Amendment claimant establish not just a takings, but the denial of just compensation, means that the claimant must first seek compensation through state procedures, should such procedures exist.  Williamson, 473 U.S. at 194, 105 S. Ct. at 3121, n.13 ("The nature of the constitutional right … requires that a property owner utilize procedures for obtaining compensation before bringing a § 1983 action." (emphasis added)).  As explained by the Court of Appeals for the First Circuit:  "if a plaintiff has not even tried to obtain compensation from the state, then we cannot say that the state has denied the plaintiff just compensation."  Elena v. Municipality of San Juan, 677 F.3d 1, 7 (1st Cir. 2012); see also, Williamson, 473 U.S. at 196, 105 S. Ct. at 3121 ("[I]f a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation.").

A claimant is excused from failing to seek just compensation in only limited circumstances, including where state remedies are "unavailable or inadequate."  Williamson, 473 U.S. at 196-97, 105 S.Ct. at 3122.  This exception is narrowly construed, and the claimant must

carry the heavy burden of showing unavailability or inadequacy of state remedies.  Deniz v. Municipality of Guaynabo, 285 F.3d 142, 146 (1st Cir. 2002).

Here, for purposes of the motion to dismiss, Plaintiffs and Defendants agree that the installation of the pond leveler amounts to a "permanent physical invasion," in other words, a taking of property, for which the Fifth Amendment may require just compensation.  Defendants claim -- and the Plaintiffs do not and cannot dispute -- that the Plaintiffs have not pursued, i.e. exhausted, available state remedies for just compensation.  Instead, the parties dispute whether the Plaintiffs need to exhaust a just compensation claim before Plaintiffs' takings claim is ripe.  Defendants contend the Plaintiffs must first seek compensation under Massachusetts' inverse condemnation statute, Mass. Gen. Laws ch. 79, § 14.[4]  In response, Plaintiffs make essentially two arguments.

First, the Plaintiffs contend they brought suit in state court where, they claim, the stringent exhaustion requirements discussed in the federal context do not apply.  To support this contention, they rely on three regulatory takings cases:  Giovanella v. Conservation Comm'n of Ashland, 457 Mass. 720 (2006); Blair v. Dep't of Conservation and Recreation, 457 Mass. 634 (2010); and, Grasso v. City of New Bedford, 55 Mass.App.Ct. 1116 (2002).  A closer reading of these cases shows that this reliance is misplaced.  Giovanella, which involved a Fifth Amendment challenge to a municipal conservation commission's denial of a permit to build a home on a lot, expressly recognized that a regulatory taking case becomes ripe when two

---

[4] Massachusetts' inverse condemnation statute applies "when the real estate of any person … has been entered for a public purpose … and … he has suffered an injury for which he is entitled to compensation, the damages therefor may be recovered under this chapter."  Mass. Gen. Laws ch. 79, § 10.  The statute further provides that an aggrieved property owner may bring an action in the state's courts for an assessment of any such damages.  Id. at § 14 ("A person entitled to an award of damages under [Chapter 79] ... may petition for the assessment of such damages to the superior court of the county in which the property taken or injured was situated.").

requirements are met: (1) a final decision regarding the regulation, and (2) exhaustion of state remedies. Giovanella, 457 at 723 ("an owner must exhaust available state remedies before seeking relief under federal law."). Although the Supreme Judicial Court did not require Mr. Giovanella to pursue an inverse condemnation claim, the opinion makes clear that he effectively exhausted available state remedies and an inverse condemnation claim would have been cumulative of a pending claim:

> We … conclude that Giovanella exhausted his available state remedies…. There were no other administrative remedies provided for in the [applicable regulations] …. Some Federal courts have required litigants to pursue an "inverse condemnation" proceeding under State law before considering State remedies exhausted. In this case, an inverse condemnation claim would take the same form as the claim with which we are presented here. We see no reason to require Giovanella to make his claims first under the heading of "inverse condemnation" before considering the identical claim under the heading "regulatory taking."

Id. at 724 (internal citations omitted).

Similarly, on a closer reading, Blair and Grasso do not support the Plaintiffs' argument that state courts do not require exhaustion before a Fifth Amendment claim is ripe. Blair is not on point as it did not address a violation of the Fifth Amendment; rather, it discussed a regulatory taking in the context of an alleged violation of the Massachusetts Declaration of Rights and Massachusetts Constitution. Blair, 457 Mass. at 271.[5] In Grasso, which did involve a Fifth Amendment claim, the Massachusetts Appeals Court implicitly approved the observation of the motion judge that plaintiffs alleging a violation of the Fifth Amendment Takings Clause must first exhaust available state remedies. See Grasso, 55 Mass. App. Ct. at 8, n. 10. The exhaustion

---

[5] Notwithstanding the difference in constitutional claims in Blair, the procedural posture of the case and that of its predecessor confirm that Massachusetts courts require exhaustion, or an exception to the exhaustion requirement, to be ripe. See Blair, 457 Mass. at 270-71 (discussing history of predecessor case where the Blairs' original claims were dismissed as unripe based on their failure to exhaust state remedies (i.e., pursue a variance)).

requirement was suspended in Grasso because, in the view of the Appeals Court, the case fell within an exception to the exhaustion requirement. Id. In sum, none of the three cases on which the Plaintiffs rely persuades this Court to depart from the general rule that a claimant alleging a violation of the Takings Clause of the Fifth Amendment must exhaust state remedies or show that his case falls within an exception to the exhaustion requirement.[6]

The Plaintiffs' second argument fares no better than the first. They argue that but for Defendants' removal of the case from Worcester Superior Court to federal court, Plaintiffs would have pursued available state remedies in state court, and they accuse Defendants of gamesmanship in removing their Complaint and then moving for its dismissal. See, Plaintiffs' Opposition Memorandum (Doc. #15), p. 4. While there is some superficial appeal to the Plaintiffs' argument, the fundamental problem in this second argument is that Plaintiffs elected to bring a claim under the Fifth Amendment, albeit in state court, and the law is pellucid that such a claim is premature unless and until a claimant has exhausted state claims, or shown that he is excepted from doing so.[7] Arguably, even if the case had not been removed, the cases relied

---

[6] Insofar as a regulatory taking is not ripe for adjudication unless two prerequisites are met (namely exhaustion of administrative remedies and final regulatory determination), other state court decisions rejecting claims for a lack of final determination also refute Plaintiffs' suggestion that Massachusetts state courts apply a less stringent standard to challenges for ripeness. See e.g., Daddario v. Cape Cod Comm'n, 425 Mass. 411 (1997) (owner's taking claim challenging the Commission's disapproval of a development permit was not ripe for consideration, absent a final determination by the Commission); Costello v. Kelland, 74 Mass. App. Ct. 1109 (2009) (takings claim not ripe until historical commission made its final decision); U.S. Gypsum Co. v. Executive Office of Envtl. Affairs, 69 Mass. App. Ct. 243, 259, n. 32 (2007) (takings claim not ripe until the subject license application was processed and denied).

[7] It is settled by way of Williamson and its progeny, that the analytical basis of the exhaustion requirement, regardless of the forum in which the claim is brought, is that there has been no denial of just compensation under the Fifth Amendment unless a claimant first pursues, but is denied, compensation from the government actor. Williamson, 473 U.S. at 196, 105 S.Ct. at 3121("[I]f a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation.").

on by the Plaintiffs themselves show that Defendants could have moved for dismissal of Plaintiffs' Fifth Amendment takings claim in state court for a failure to exhaust. Thus, the failure to exhaust is not, as the Plaintiffs claim, a function of the forum in which the claim is brought, but the claim they have chosen to bring.

In sum, the United States Supreme Court, federal courts, and Massachusetts state courts consistently require plaintiffs to exhaust available state remedies before a takings claim under the United States Constitution is ripe for adjudication. Because an inverse condemnation proceeding holds the prospect of just compensation, Plaintiffs have failed to carry their burden of demonstrating their claim is ripe for adjudication. Deniz, 285 F.3d at 147.

Accordingly, I recommend dismissal of Count One. As a result, the Complaint becomes a one-count complaint regarding the Massachusetts Civil Rights Act. This court lacks subject matter jurisdiction over the surviving pendant claim. Remand is therefore warranted pursuant to 28 U.S.C. § 1367(c)(3). Upon remand, Plaintiffs may seek leave to amend the Complaint. See Fram v. City of Boston, 363 Mass. 68 (1973) (recognizing ability to amend equitable proceeding alleging improper taking of property into petition for assessment of damages under chapter 79); see also Mass. R. Civ. P. 15(c).

**CONCLUSION**

In accordance with the foregoing discussion, I RECOMMEND that the Motion to Dismiss (Document #12) be GRANTED IN PART (as to Count One) and DENIED IN PART (as to Count Two) . I FURTHER RECOMMEND that the Court REMAND the Complaint to the Massachusetts Superior Court Department (Worcester County) for further proceedings.[8]

/s/ David H. Hennessy
David H. Hennessy
United States Magistrate Judge

---

[8] The parties are hereby advised that, under the provisions of Fed. R. Civ. P. 72, any party who objects to these proposed findings and recommendations must file specific written objections thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objections are made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation. See Keating v. Sec'y of Health & Human Servs., 848 F.2d 271, 275 (1st Cir. 1988); United States v. Emiliano Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 604-05 (1st Cir. 1980); see also Thomas v. Arn, 474 U.S. 140 (1985).